

**ORDERED in the Southern District of Florida on March 14, 2022.**

Erik P. Kimball, Judge
United States Bankruptcy Court
_____

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF FLORIDA
WEST PALM BEACH DIVISION

**In re:**

**FRANK GABRIEL CAVALLINO,**         Case No. 20-22282 -EPK
                                                                 Chapter 13

    Debtor.
_____/

**AIXO, LLC,**

    Plaintiff,

v.                                                                           Adv. Proc. No. 21-01001-EPK

**FRANK GABRIEL CAVALLINO,**

    Defendant.
_____/

## MEMORANDUM OPINION

      The Court held trial in this adversary proceeding on January 6, 2022. At the Court's direction, the parties filed post-trial briefs. ECF Nos. 36, 40, and 41. The Court carefully reviewed the record in light of the Amended Complaint [ECF No. 10] and the post-trial

briefs.[1]  The following constitutes the Court's findings of fact and conclusions of law pursuant to Fed. R. Civ. P. 52, made applicable to this adversary proceeding by Fed. R. Bankr. P. 7052.

In the Amended Complaint, the plaintiff AIXO, LLC presents three counts for relief under sections[2] 523(a)(4) (embezzlement and larceny) and 523(a)(6).  In each, AIXO seeks to have the Court except from discharge a debt represented by a state court default judgment AIXO obtained against the debtor, Frank Cavallino, and the debtor's company, Property Management Consulting Group, LLC, before Mr. Cavallino filed this bankruptcy case.

It is undisputed that AIXO and Property Management entered into a written agreement in 2018 under which Property Management was to assist AIXO in managing a number of residential rental properties in Florida.  Mr. Cavallino was not a party to the agreement in his individual capacity.  The written agreement was admitted in evidence and both Mr. Cavallino and AIXO's principal testified about it.

During the time that Property Management provided property management services to AIXO, it also provided property management services to several other landlords.  The company maintained a single operating account, first at SunTrust Bank and later at Seacoast Bank, where it deposited rents and other income and from which it paid property expenses and other items including its own expenses.  Bank statements from these accounts were admitted in evidence.

---

[1] The Court directed the parties to file briefs in the form of proposed findings of fact and conclusions of law.  The Court advised the parties that each statement of fact in the proposed findings of fact must be supported by a specific reference to documentary evidence admitted or testimony given at trial, or the Court may disregard the statement of fact and the party will be deemed to have waived the right to rely on such statement of fact.  ECF No. 36.
[2] When used in this Memorandum Opinion, the word "section" refers to the relevant section of the United States Bankruptcy Code, 11 U.S.C. § 101 *et seq.*, unless otherwise noted.

Mr. Cavallino testified that Property Management also maintained an account or accounts for security deposits from the properties it managed, including AIXO's properties. Other than Mr. Cavallino's limited testimony on this issue, the Court received no information regarding such bank account or accounts. No bank statements were admitted in evidence. Indeed, AIXO's counsel was surprised when Mr. Cavallino testified that Property Management had a separate account for security deposits.

AIXO and Property Management terminated their contractual relationship at the end of March 2019. At termination, Property Management owed AIXO an amount equal to rent and security deposits from AIXO's properties less property related expenses and management fees, but Property Management failed to pay these amounts to AIXO or to AIXO's new property manager. AIXO sued both Property Management and Mr. Cavallino himself in a Florida state court and, the defendants failing to answer, AIXO obtained a default judgment against both, jointly and severally. Thus, AIXO holds an unsecured claim against Mr. Cavallino in the amount of $62,345.22 as of the petition date in this case, plus additional post-judgment interest. The goal of this adversary proceeding is to have that claim excepted from Mr. Cavallino's discharge.

The terms of the written agreement between AIXO and Property Management are important here. The agreement is titled "Independent Contractor Property Manager Agreement." The agreement does not in any way address collection or payment of rents or security deposits; neither of those terms appears anywhere in the agreement. There is nothing in the agreement that would cause the Court to conclude that Property Management agreed to accept rent or security deposits and hold them separately for the benefit of AIXO. Indeed, at section 5.1 of the agreement the parties explicitly disclaim an agency relationship between AIXO and Property Management.

Based on the terms of the agreement, the relationship between Property Management and AIXO was that of a debtor and creditor only. AIXO certainly obtained a claim against Property Management, but nothing in their agreement would lead the Court to conclude that AIXO had any legally recognizable property interest in rents or security deposits AIXO's tenants gave to Property Management.

The parties' conduct also indicates a debtor-creditor relationship. That Property Management provided periodic reports to AIXO regarding rent collected, expenses, management fees, and reserves does not change the Court's view. Those reports are consistent with AIXO being a creditor of Property Management. Property Management was not required to ask AIXO for prior permission to pay any expenses or management fees relating to AIXO's properties. Property Management had unfettered discretion to use funds received from AIXO's tenants. All rents were deposited in Property Management's operating accounts where they were commingled with other funds. In fact, as AIXO itself points out, Property Management did not hold sufficient funds to pay the amounts shown as owing to AIXO in those reports.

The operating accounts maintained by Property Management, at SunTrust Bank and later at Seacoast Bank, included all rents collected from properties managed by Property Management and apparently other income as well. In other words, rents from properties owned by AIXO were commingled with rents from properties owned by other landlords and other income. While Property Management was, at least for the final month or two, managing properties only for AIXO, there is no tracing or similar evidence from which the Court could conclude that the funds remaining in the operating account were attributable to AIXO's properties alone. Nor is it possible for the Court to glean this from close examination of the bank statements. AIXO's post-trial brief does not shed any light on the issue.

The Court considered whether the potential existence of a separate corporate bank account for security deposits might support the conclusion that AIXO had some recognizable property interest in such account. But AIXO did not present any concrete evidence relating to any such account or accounts. The Court has only Mr. Cavallino's brief testimony on the issue, itself a surprise to AIXO. The Court has no way of knowing, for example, whether security deposits from properties not owned by AIXO or any other funds were commingled in any such account, or how such funds were used. The only conclusion the Court can make with regard to security deposits received by Property Management from AIXO's tenants is that neither AIXO nor its successor property manager received those funds. Based on the evidence admitted in this case, the Court cannot conclude that AIXO has any claim relating to security deposits received by Property Management other than as a creditor with the ability to sue Property Management to recover those amounts.

AIXO holds a pre-bankruptcy state court default judgment against Mr. Cavallino as well as against Property Management. That is the basis for AIXO's claim against Mr. Cavallino in this bankruptcy case. Mr. Cavallino undertook no personal contractual duty to AIXO. In other words, even if Property Management's contract with AIXO had established a relationship other than a debtor-creditor relationship, Mr. Cavallino undertook no such duty himself.

In Counts I and II of the Amended Complaint, AIXO seeks relief under section 523(a)(4) based on larceny and embezzlement. AIXO argues that by accepting rent and security deposits from AIXO's tenants, through his company Property Management, and then using such funds for his own purposes rather than paying them to AIXO, Mr. Cavallino committed the tort of larceny or embezzlement.

Although separate claims, the only difference between embezzlement and larceny under section 523(a)(4) is whether the debtor was lawfully in possession of the property at

the time of the fraudulent misappropriation.  *Why Int'l, LLC v. Disbrow (In re Disbrow)*, No. 18-01112-EPK, 2019 Bankr. LEXIS 2902, at *46 (Bankr. S.D. Fla. Apr. 22, 2019). Embezzlement is the "fraudulent appropriation of property by a person to whom such property has been entrusted, or into whose hands it has lawfully come."  *Moore v. United States*, 160 U.S. 268, 269 (1895).  Larceny is the "fraudulent taking and carrying away of property of another with intent to convert such property to his use without consent of another."  *Ford v. Pupello (In re Pupello)*, 281 B.R. 763, 768 (Bankr. M.D. Fla. 2002) (citing *Ploetner-Christian v. Miceli (In re Miceli)*, 237 B.R. 510, 516 (Bankr. M.D. Fla. 1999)). Larceny is sometimes described as a "felonious taking of another's personal property with intent to convert it or deprive the owner of the same."  *Weinreich v. Langworthy (In re Langworthy)*, 121 B.R. 903, 907 (Bankr. M.D. Fla. 1990) (citing Black's Law Dictionary, 5th ed.).

As AIXO acknowledges in its post-trial brief, it is a hallmark of both larceny and embezzlement that the property taken be property of the plaintiff.  The plaintiff must have some legally recognizable property interest in what the defendant took.  *Marbella, LLC v. Cuenant (In re Cuenant)*, 339 B.R. 262, 277 (Bankr. M.D. Fla. 2006) ("A key element of both larceny and embezzlement is that the plaintiff must establish ownership of the property taken.")  In this case, considering all of the evidence admitted at trial, the Court concludes that AIXO had no property interest in the rents or security deposits it claims are due from Property Management.  Under the terms of the agreement between AIXO and Property Management, and in light of their actual course of dealing, AIXO is merely a creditor of Property Management, with no right in any funds that flowed through the accounts of Property Management superior to any other creditor of Property Management.  Because

AIXO failed to show that it had a property interest in the funds received by Property Management, its claims based on larceny and embezzlement must fail.

In Count III of the Amended Complaint, AIXO seeks relief under section 523(a)(6), arguing that Mr. Cavallino's actions in managing Property Management to the detriment of AIXO constitute willful and malicious injury to AIXO.  As confirmed in AIXO's post-trial brief, at the close of trial AIXO conceded that it had not met its burden on this claim, and the Court agrees.  However, because this is a chapter 13 case, section 523(a)(6) applies only if Mr. Cavallino seeks a discharge under section 1328(b) after confirmation.  11 U.S.C. §§ 523(a), 1328(a)(2), (b) and (c).  Mr. Cavallino has not done so; indeed, his plan has yet to be confirmed.  Thus, the claim presented in count III is not ripe.  The Court will deny relief under section 523(a)(6) at this time without prejudice to AIXO raising this issue should Mr. Cavallino later seek a discharge under section 1328(b).

This may seem like a harsh outcome.  Mr. Cavallino used funds from the Property Management operating account for his personal use.  Some of those funds likely came from rent and security deposits paid in connection with AIXO's properties.  But the facts of this case appear unique in comparison to existing case law.  It is unusual for a property owner to structure its agreement with a property manager in such a way as to disclaim even an agency relationship, and to allow the manager unfettered discretion over sums collected, leaving the property owner with the status of a mere creditor.  AIXO must live with the agreement it negotiated and implemented.

For the foregoing reasons, AIXO is not entitled to any relief requested in the Amended Complaint.  Consistent with Fed. R. Civ. P. 58, made applicable to this adversary proceeding by Fed. R. Bankr. P. 7058, the Court will enter a separate judgment in favor of Mr. Cavallino on all counts.

###

Counsel for the Plaintiff is directed to serve a copy of this Memorandum Opinion on all appropriate parties and file a certificate of service.